UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE PAPER TIGERS, INC., )
    Plaintiff, )
    ) No. 24-cv-2638
v. )
    ) Judge April M. Perry
ARCH INSURANCE GROUP, INC., )
ALLIANT INSURANCE SERVICES, INC., )
and CRC INSURANCE SERVICES, LLC )
f/k/a CRC INSURANCE SERVICES, INC., )
    )
    Defendants. )
    )
_____ )
ALLIANT INSURANCE SERVICES, INC., )
    )
    Third-Party Plaintiff, )
v. )
    )
ENTRUST ALARM, INC. d/b/a ARKANSAS )
PROTECTION SERVICES, )
    )
    Third-Party Defendant. )

**OPINION AND ORDER**

This dispute arises out of a fire at a facility operated by The Paper Tigers, Inc. ("Paper Tigers"). After failing to receive insurance coverage for the fire loss, Paper Tigers sued its insurance provider Arch Insurance Group, Inc. ("Arch"), its insurance broker Alliant Insurance Services, Inc. ("Alliant"), and Arch's authorized agent CRC Insurance Services, LLC f/k/a CRC Insurance Services, Inc. ("CRC"). In response to Paper Tigers's suit, Alliant filed a third-party complaint against Entrust Alarm, Inc. d/b/a Arkansas Protection Services ("APS") seeking contribution in the event that Alliant was found liable for any damages resulting from the fire. APS now moves to dismiss Alliant's third-party complaint pursuant to Federal Rule of Civil

Procedure 12(b)(2) for lack of personal jurisdiction. For the reasons that follow, the Court grants APS's motion to dismiss.

## BACKGROUND

Paper Tigers is an Illinois corporation with its principal place of business in Schaumburg, Illinois. Doc. 44 ¶ 1. Paper Tigers specializes in reworking paper and runs processing, warehousing, and distribution operations across the United States, including in a facility in Pine Bluff, Arkansas (the "Pine Bluff Facility"). *Id.* ¶¶ 8, 10.

APS is an Arkansas corporation with its principal place of business in Arkansas. Doc. 44 ¶ 4. APS has no offices, registered agents, or employees in Illinois and does not advertise or solicit business here. Doc. 72-4 ¶¶ 6–9.

On November 7, 2022, Paper Tigers and APS entered into a written contract ("Monitoring Agreement") for APS to provide alarm monitoring services for the Pine Bluff Facility. Doc. 44 ¶ 19. Under the Monitoring Agreement, APS agreed to use "reasonable efforts to orally communicate [any] alarm by telephone to the authority or persons designated on the Customer's Information Sheet, and to verify the alarm with the customer by telephone." Doc. 44-2. Specifically, APS was to notify three Paper Tigers employees in the event of an alarm at the Pine Bluff Facility, all of whom had phone numbers with area codes assigned to northeastern Illinois.[1] Doc. 97-1 at 4. During the course of the contract, APS emailed invoices to Paper Tigers and accepted payment via checks sent from a Paper Tigers office in Illinois. *Id.* at 5, 7.

---

[1] The Court takes judicial notice of the geographic regions associated with the Paper Tigers employee area codes. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (courts may take judicial notice of an "undisputed fact in the public record").

On August 21, 2023, at 4:26 p.m., APS received a notification that a fire alarm at the Pine Bluff Facility had been triggered. Doc. 44 ¶ 20. The APS employee assigned to monitor the alarm deferred, cancelled, and ignored the alarm without reporting it to either the appropriate authority or Paper Tigers. *Id.* ¶ 21. By the time APS first attempted to report the fire at 4:32 a.m. on August 22, fire department personnel had already been dispatched. *Id.* ¶ 25. Due to APS's failure to respond to the alarm, the fire burned and the facility was flooded by the sprinkler system, destroying nearly $1.2 million of product. *Id.* ¶¶ 10, 22-23. Alliant alleges that if APS had timely notified Paper Tigers, the damage at the Pine Bluff Facility would have been significantly less. *Id.* ¶¶ 33-34.

## ANALYSIS

APS seeks dismissal of Alliant's third-party claim for lack of personal jurisdiction. Alliant bears the burden of establishing personal jurisdiction once it has been challenged. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). When a court rules on a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In making this determination, the Court reads the complaint liberally and resolves factual disputes in the plaintiff's favor. *Greving*, 743 F.3d at 491.

A federal court sitting in diversity "has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (internal quotation omitted). The Illinois long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted by the Fourteenth Amendment's Due Process Clause. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021). Under the Due

3

Process Clause, a court may not exercise personal jurisdiction over an out-of-state defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). There are two types of personal jurisdiction: general and specific. *Kipp v. Ski Enter. Corp. of Wisc.,* 783 F.3d 695, 697-698 (7th Cir. 2015). General jurisdiction is "all-purpose" while specific jurisdiction is case-specific. *Id.* For corporations, general jurisdiction exists when the corporation's contacts with the state are so constant and pervasive that it is "essentially at home in the forum State." *Id.* Specific jurisdiction exists over an out-of-state defendant if the defendant "purposefully directed" its activities to the forum state and the litigation arises out of or relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

When determining whether a defendant has purposefully directed its activities at the forum state, contacts that are "random, fortuitous, or attenuated" will not do. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Nor is "the mere fact that a defendant's conduct affects a plaintiff with connections to the forum State" sufficient to establish jurisdiction. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Ultimately, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023). In that vein, the Supreme Court has held that a plaintiff's contract with an out-of-state party will not "automatically establish sufficient minimum contacts" to subject that party to personal jurisdiction in the plaintiff's home state. *Burger King*, 471 U.S. at 478. Instead, the Court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, instead of starting and

4

ending with the mere existence of a contract." *Ubiquity*, 72 F.4th at 225-26 (internal quotations omitted).

Alliant does not argue that general jurisdiction over APS is appropriate, and so the sole issue before the Court is whether APS's contacts with Illinois support the exercise of specific jurisdiction over APS. The parties agree that APS has no offices, employees, or registered agents in Illinois, and that APS does not send its employees to Illinois to conduct business or in any other way advertise or solicit business in Illinois. Still, Alliant argues that the Monitoring Agreement between Paper Tigers and APS is sufficient evidence of APS purposefully directing its activities toward Illinois. As is explained below, the Court disagrees.

Under the Monitoring Agreement, APS assumed a duty to monitor the alarms at the Pine Bluff, Arkansas facility and notify three Paper Tigers employees with Illinois phone numbers in the event of an alarm. Even drawing the inferences in Alliant's favor that Illinois area codes indicate the employees resided in Illinois and that APS knew this, the Court does not believe that this constitutes APS purposefully directing its activities to Illinois. The fact that Paper Tigers has employees in Illinois is evidence of Paper Tigers's connections to Illinois, not APS's connections to Illinois. *See Ubiquity*, 72 F.4th at 225 ("[P]ersonal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state"). The Monitoring Agreement itself provides only an Arkansas address for Paper Tigers, not an Illinois address. Doc. 44-2. In fact, there is nothing on the face of the Monitoring Agreement that would indicate that APS was contracting with an Illinois company. *Id*.

5

Nor does the fact that APS emailed invoices to Paper Tigers employees and received checks from a Paper Tigers office in Illinois support a finding of specific jurisdiction.[2] The Seventh Circuit has held that these types of administrative communications with a plaintiff are not sufficient to establish personal jurisdiction. *See Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017). In *Brook*, an Illinois-based trustee of an Arizona-based trust engaged the services of an Arizona law firm for representation. *Id*. at 551. For thirteen years, the firm and trustee conducted business through correspondence and phones calls between Arizona and Illinois. *Id*. At some point, the relationship deteriorated and the trustee sued the law firm partners for malpractice, breach of contract, and breach of fiduciary duty in Illinois federal court. *Id*. The district court granted the law firm's motion to dismiss for lack of personal jurisdiction, and the Seventh Circuit affirmed the dismissal. *Id*. Despite the "correspondence from Arizona, telephone calls, the contract governing the attorney-client relationship, attorneys' fees sent from Illinois, and [plaintiff] having felt the injury in Illinois," the Seventh Circuit concluded that these "tenuous contacts" were insufficient because the plaintiff was "attempt[ing] to use Defendants' relationship with [plaintiff] to establish personal jurisdiction, not the Defendants' relationship with Illinois." *Id*.

*Brook* instructs that personal jurisdiction requires more than the sorts of contacts incidental to doing business with a party in another state. If thirteen years of calls, payments, and

---

[2] Alliant states that APS "sent emails including invoices to Paper Tigers' employees and facilities in Illinois." *See* Doc. 97 at 2. This phrasing is a bit misleading. In APS's response to jurisdictional discovery APS states that it sent no physical documents to any facility in Illinois, and that the only materials transmitted to APS were emailed invoices. *See* Doc. 97-1 at 5. The Seventh Circuit has explicitly declined to find that an email constitutes purposeful direction: "As a practical matter, email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and winds up wherever the recipient happens to be at that instant." *Advanced Tactical Ordnance Sys., LLC, v. Real Action Paintball, Inc*., 751 F.3d 796, 803 (7th Cir. 2014).

correspondence with an out-of-state defendant fails to establish minimum contacts in *Brook*, then neither do APS's invoices, payments, and an (unmet) obligation to call Illinois phone numbers.[3]

The Court finds it notable that Alliant has not alleged any affirmative, deliberate efforts by APS to solicit or secure business in Illinois. *See*, *e.g.*, *Burger King*, 471 U.S. at 479–80 (minimum contacts established by Michigan defendant's deliberate outreach and negotiation with Florida fast food corporation to enter long-term franchise agreement); *Nw. 1 Trucking Inc. v. Haro*, 613 F.Supp.3d 1081, 1094 (N.D. Ill. 2020) (personal jurisdiction proper where out-of-state seller of bulldozer "actively pursued a contract with an Illinois business for the use of a machine in Illinois"); *Trident Indus., LLC v. Mach. Prods., Inc.*, 2014 WL 5441191, at *2–3 (N.D. Ill. Oct. 27, 2014) (out-of-state defendant that approached Illinois business and secured contract by making false assurances and misrepresentations was subject to personal jurisdiction in Illinois). Even after conducting jurisdictional discovery, no evidence has been presented that APS purposefully directed its marketing efforts to Paper Tigers or any other Illinois company. To the contrary, APS has averred that it does not perform any security system services in Illinois. Doc. 72-4 ¶ 2. Absent such evidence, the Monitoring Agreement and its associated payments do not suffice to establish minimum contacts between APS and Illinois.

Nor has Alliant demonstrated that this litigation arises out of APS's contacts with Illinois, such that specific jurisdiction would be appropriate. Alliant's contribution claim arises from allegations that an Arkansas alarm monitoring company did not respond to an alarm at an

---

[3] Alliant also points to a prior agreement between APS and Paper Tigers dated June 2011 to make its jurisdictional case. It is true that a long-standing, highly involved contractual relationship between two parties can support a finding of personal jurisdiction. *Burger King*, 471 U.S. at 480 (personal jurisdiction in Florida proper where Michigan-based defendant entered "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with Florida corporation). But unlike in *Burger King*, Alliant has alleged nothing about the negotiation or substance of this 2011 agreement other than its existence, which does not move the needle.

Arkansas warehouse, which resulted in the destruction of property in Arkansas. Alliant correctly notes that intentional torts by an out-of-state defendant can sometimes give rise to personal jurisdiction if the injury is suffered in the victim's state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (Florida defendant's publishing of libelous material about California resident supported personal jurisdiction where "brunt of the harm" and "effects" of libel were felt in California). But for personal jurisdiction to be appropriate in such circumstances, the defendant's actions must not be "mere untargeted negligence," but rather "expressly aimed" and "calculated to cause injury" in the forum state. *Calder*, 465 U.S. at 789-791. Here, there are no allegations that APS intended to cause injury in Illinois—or even that APS intended to cause injury at all. Rather, Alliant claims that APS acted negligently. Doc. 44 at 6. The Court is not aware of any case where specific jurisdiction was premised on an out-of-state defendant's negligence committed outside of the state. To the contrary, the cases that Alliant relies on allege intentional torts by out-of-state defendants. *See Digital Merchant Sys., Inc. v. Oglesby*, 1999 WL 1101769, at *3 (N.D. Ill. Nov. 30, 1999) (alleging conspiracy by out-of-state defendants to injure plaintiff's business in Illinois); *Interlease Aviation Inv'rs II (Aolha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 910 (N.D. Ill. 2003) (alleging fraud and tortious interference).[4] Accordingly, the Court rejects Alliant's contention that APS is subject to specific jurisdiction in Illinois.

---

[4] Alliant's cited cases also precede the Supreme Court's opinion in *Walden v. Fiore*, 571 U.S. 277 (2014), which emphasized that the defendant's contacts with the forum state are what matters. This caused the Seventh Circuit to disavow previous cases which had concluded that harm suffered by the plaintiff in the forum state was enough for personal jurisdiction, concluding that that "after *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical Ordnance Systems, LLC, v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

## CONCLUSION

APS did not purposefully direct its activities to Illinois and this litigation does not arise out of or relate to any activity by APS in Illinois. Alliant has failed to make a *prima facie* showing that this Court has personal jurisdiction over APS, and therefore the Court grants APS's motion to dismiss.

Dated: July 3, 2025

_____
APRIL M. PERRY
United States District Judge